UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FANNIN AUTOMOTIVE FAMILY, INC.<br><br>Serve: PHILLIP BRUCE LESLIE<br>　　　　402 MAIN STREET, SUITE 2<br>　　　　GREENUP, KY  41144<br><br>JIM FANNIN MOTORS, INC.<br><br>Serve: CHRISTOPHER FANNIN<br>　　　　7405 U.S. ROUTE 60<br>　　　　ASHLAND, KY  41102<br><br>FANNIN AND FANNIN, LLC<br><br>Serve: GREGORY L. MONGE<br>　　　　1544 WINCHESTER AVENUE,<br>　　　　5TH FLOOR<br>　　　　ASHLAND, KY  41105-1111<br><br>CHRISTOPHER K. FANNIN<br><br>Serve: CHRISTOPHER K. FANNIN<br>　　　　7405 U.S. ROUTE 60<br>　　　　ASHLAND, KY 41102<br><br>GARY R. FANNIN,<br><br>Serve: GARY R. FANNIN<br>　　　　7405 U.S. ROUTE 60<br>　　　　ASHLAND, KY  41102<br><br>　　　　　Defendants. | Civil Action No. 17-_____ |

**COMPLAINT**

Plaintiff, BRANCH BANKING AND TRUST COMPANY ("BB&T"), by counsel, and for its complaint against FANNIN AUTOMOTIVE FAMILY, INC., JIM FANNIN MOTORS, INC., FANNIN AND FANNIN, LLC, CHRISTOPHER K. FANNIN, and GARY R. FANNIN (collectively, "Defendants") alleges and states as follows:

## PARTIES AND JURISDICTION

1. BB&T is a North Carolina banking corporation authorized to do business in Kentucky.

2. Defendant, Fannin Automotive Family, Inc. ("Fannin Automotive"), is a Kentucky corporation, with its principal place of business and registered agent office at 402 Main Street, Suite 2, Greenup, Kentucky  41144.

3. Defendant, Jim Fannin Motors, Inc. ("Fannin Motors"), is a Kentucky corporation, with its principal place of business and registered agent office at 7405 U.S. Route 60, Ashland, Kentucky  41102.

4. Defendant, Fannin and Fannin, LLC ("F&F" and collectively with Fannin Automotive and Fannin Motors, "Borrowers"), is a Kentucky limited liability company with its principal place of business at 7405 U.S. Route 60, Ashland, Kentucky  41102 and its registered agent office at 1544 Winchester Avenue, 5th Floor, Ashland, Kentucky  41105.  All of the members of F&F are residents of Kentucky.

5. Defendant, Gary R. Fannin ("Gary Fannin"), is a resident of Kentucky. Gary Fannin is one of the two members of F&F.

6. Defendant, Christopher K. Fannin ("Christopher Fannin," and together with Gary Fannin, "Guarantors"), is a resident of Kentucky. Christopher Fannin is one of the two members of F&F.

7. This Court has subject matter jurisdiction over the claims asserted by BB&T against Borrowers and Guarantors in this case because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, and the parties are citizens of different states. *See* 28 U.S.C. § 1332.

8. Borrowers and Guarantors are subject to the personal jurisdiction of this Court because, *inter alia*, they transact business in Kentucky.

9. Venue is proper in this Court because all Defendants reside in this district and the collateral that is the subject of this Complaint is located in this district. *See* 28 U.S.C. § 1391.

## FACTS

I. **The Loans to Borrowers.**

A. <u>The Floor Plan Loan.</u>

10. On August 11, 2015, Borrowers, Guarantors, and BB&T entered into that certain Dealer Floor Plan and Security Agreement, together with Schedule A attached thereto (collectively, the "Floor Plan Agreement"), attached as <u>Exhibit A</u>.

11. On August 11, 2015, Borrowers executed and delivered to BB&T that certain demand promissory note payable to BB&T in the original principal amount of $16,500,000.00, together with the Addendum to Promissory Note (collectively, the "Floor Plan Note"), attached as <u>Exhibit B.</u>

12.     In order to secure the obligations under the Floor Plan Agreement and Floor Plan Note, each of the Borrowers granted to BB&T a first priority security interest in all of Borrowers' Inventory, Goods, Chattel Paper, including Electronic Chattel Paper, Accounts, Documents, Deposit Accounts, Instruments, Investment Property, General Intangibles, Equipment, Letter of Credit Rights, Supporting Obligations (as each such capitalized term is defined in the Floor Plan Agreement), and all products and Proceeds (as such capitalized term is defined in the Floor Plan Agreement) (collectively, "Floor Plan Collateral").  *See* Ex. A, § 5.01.

13.     BB&T properly perfected its security interest in the Floor Plan Collateral by filing with the Kentucky Secretary of State certain UCC Financing Statements as Document 2015-2782690-52.1 on August 11, 2015 (the "Floor Plan Financing Statements"), attached as Exhibit C.

14.     Upon information and belief, Borrowers currently have an inventory of approximately 300 vehicles which are subject to the Floor Plan Agreement.

15.     As security for the payment and performance of Borrowers' obligations under the Floor Plan Note and Floor Plan Agreement, Guarantors executed and delivered to BB&T that certain Guaranty of Payment Agreement dated August 11, 2015 (the "Floor Plan Guaranty"), attached as Exhibit D, whereby Guarantors unconditionally guaranteed the full and prompt payment of all indebtedness, obligations and liabilities of Borrowers to BB&T.

B.   The Term Loan.

16.   On August 11, 2015, Borrowers, Guarantors, and BB&T entered into that certain Loan Agreement (the "Term Loan Agreement"), attached as Exhibit E.

17.   On August 11, 2015, Borrowers also executed and delivered to BB&T that certain Promissory Note payable to BB&T in the original principal amount of $11,300,000.00 (the "Term Note," and together with the Floor Plan Note, the "Notes"), attached as Exhibit F.

18.   As security for the payment and performance of Borrowers' obligations under the Term Note, Gary Fannin executed and delivered to BB&T that certain Guaranty Agreement dated August 11, 2015 (the "Gary Fannin Guaranty"), attached as Exhibit G, whereby he unconditionally guaranteed the full and prompt payment of all indebtedness, obligations, and liabilities of Borrowers to BB&T.

19.   As security for the payment and performance of Borrowers' obligations under the Term Note, Christopher Fannin executed and delivered to BB&T that certain Guaranty Agreement dated August 11, 2015 (the "Christopher Fannin Guaranty," and together with the Gary Fannin Guaranty, the "Term Note Guaranties;" the Term Note Guaranties together with the Floor Plan Guaranty, the "Guaranties"), attached as Exhibit H, whereby he unconditionally guaranteed the full and prompt payment of all indebtedness, obligations, and liabilities of Borrowers to BB&T.

20.   The Term Note is secured by, among other collateral, a first priority lien on certain real property located in Boyd County, Kentucky and commonly known as 7045 U.S. Route 60, Ashland, Kentucky (the "Dealership Property"), all as more fully

described in that certain Mortgage from F&F to BB&T dated August 11, 2015 (the "Dealership Mortgage"), attached as <u>Exhibit I</u>, recorded August 14, 2015, at Mortgage Book 1308, Page 19, in the Office of the Boyd County, Kentucky Clerk ("Clerk's Office").

21. The Term Note is further secured by that certain Assignment of Leases and Rents from F&F to BB&T dated August 11, 2015, recorded August 14, 2015, at Mortgage Book 1308, Page 30, in the Clerk's Office whereby F&F granted to BB&T a first priority lien on the leases, rents, and profits arising from the Dealership Property (the "ALR"), attached as <u>Exhibit J</u>.

22. The indebtedness evidenced by the Floor Plan Agreement, the Floor Plan Note, the Term Loan Agreement, the Term Note, and all other written documents executed in connection therewith, together with all written renewals, amendments, modifications, extensions, supplements, and/or replacements thereof, are collectively referred to herein as the "Indebtedness."

**II.    Defaults, Forbearance and Additional Collateral.**

23. On June 17, 2016, BB&T sent two letters to Borrowers and Guarantors, notifying them that, because Borrowers were in default under the Floor Plan Agreement, the Floor Plan Note, the Term Loan Agreement, and the Term Note, BB&T had accelerated and declared all Indebtedness under the Floor Plan Note and the Term Note immediately due and payable, attached as <u>Exhibit K</u>.

24. On August 12, 2016, Borrowers, Guarantors, and BB&T entered into that certain Forbearance Agreement, as amended by First Amendment to Forbearance Agreement dated as of October 28, 2016, as amended by Second Amendment to

Forbearance Agreement dated as of January 30, 2017 (collectively, the "Forbearance Agreement"), attached as <u>Exhibit L</u>.

25. In connection with the Forbearance Agreement, Christopher Fannin executed and delivered to BB&T that certain Security Agreement dated August 12, 2016 (the "Christopher Fannin Security Agreement"), attached as <u>Exhibit M</u>, granting BB&T a first priority security interest in all of his tangible personal property including without limitation his firearms collection, his jewelry collection, and his coin and currency collection (collectively, the "Christopher Fannin Personal Property Collateral," and together with the Floor Plan Collateral, the "Collateral") as security for the Indebtedness.

26. BB&T properly perfected its security interest in the Christopher Fannin Personal Property Collateral by filing with the Kentucky Secretary of State that certain UCC Financing Statement File No. 2016-2850433-14.01 on August 14, 2016 (the "Christopher Fannin Financing Statement," and together with the Floor Plan Financing Statement, the "Financing Statements"), attached as <u>Exhibit N.</u>

27. The Floor Plan Agreement, the Floor Plan Note, the Term Loan Agreement, the Term Note, the Guaranties, the Christopher Fannin Security Agreement, the Dealership Mortgage, the ALR, the Forbearance Agreement, and the Financing Statements, and all other written documents executed in connection therewith, together with all written renewals, amendments, modifications, extensions, supplements, and/or replacements thereof, are collectively referred to herein as the "Loan Documents."

**III.    Borrowers' and Guarantor's Continued Default Under the Loan Documents.**

28.    Borrowers defaulted under the terms of the Loan Documents, as a result of, among other things, the failure to meet certain covenants, conditions, and obligations under the Loan Documents, including but not limited to, the failure to pay obligations as they became due.

29.    On April 10, 2017, BB&T sent a letter to Borrowers and Guarantors, notifying them that, because Borrowers were in default under the Floor Plan Agreement, the Floor Plan Note, the Term Loan Agreement, and the Term Note, BB&T had accelerated and declared all Indebtedness under the Floor Plan Note and the Term Note immediately due and payable, attached as Exhibit O.

30.    As of April 12, 2017, the Indebtedness owed to BB&T pursuant to the terms of the Floor Plan Note, exclusive of attorneys' fees/professional fees and costs, and default interest (the "Floor Plan Indebtedness") was at least $7,006,954.20.

31.    As of April 12, 2017, the Indebtedness owed to BB&T pursuant to the terms of the Term Note, exclusive of attorneys' fees/professional fees and costs, and default interest (the "Term Note Indebtedness") was at least $10,816,072.55.

32.    BB&T holds all of the right, title, and interest in and to the Loan Documents.

33.    BB&T has a valid, properly perfected, and first priority security interest in and lien on the Collateral.

34.    Borrowers have defaulted under the Loan Documents by, *inter alia*, failing to timely make all payments due thereunder, as required by the Loan Documents.

Borrowers expressly acknowledged these defaults in the Forbearance Agreement. *See* Ex. K, at ¶ 2.

35. Borrowers have not timely paid the Indebtedness, nor have they cured the other existing defaults, as required by the Loan Documents.

36. BB&T has performed all conditions precedent required of it pursuant to the Loan Documents or has been excused as a result of the breaches by Borrowers and/or Guarantors.

37. The Loan Documents require Borrowers to pay to BB&T all of BB&T's out-of-pocket costs, fees, expenses, and other expenditures, including but not limited to, reasonable attorneys' fees and expenses, paid or incurred by BB&T to third parties incident to and in the enforcement of the Loan Documents.

IV. **Borrowers' Failure to Allow BB&T to take Possession of the Collateral and Guarantors' Threats of Bodily Harm to BB&T Representatives.**

38. The Floor Plan Agreement provides, in relevant part, that:

> In the event that Borrowers shall fail to make payments required by this Agreement in accordance with the terms set out herein . . . or upon the occurrence of any other Event of Default as described hereinabove, BB&T may, in its sole discretion . . . exercise any and all of its rights at law, in equity or otherwise, including, but not limited to . . . **(i) taking immediate possession of the Items (or any part or piece thereof) without notice or resort to legal process; (ii) entering upon any premises upon which the Items** (or any part or piece thereof) may be situated and removing the Items therefrom. . . .

See Ex. A, at § 9.04 (emphasis added).

39. The Christopher Fannin Security Agreement also provides, in relevant part, that upon an event of default, BB&T may:

> Take possession of any Collateral if not already in its possession **without demand and without legal process**. Upon Secured Party's demand, Debtor will assemble and make the Collateral available to Secured Party as it directs. **Debtor grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.**

*See* Ex. L, at § 9.2(ii) (emphasis added).

40. Mitch Turknett and Tom Findlay of BB&T arrived at the Dealership Property the morning of April 11, 2017 to take possession of the Collateral in accordance with the Loan Documents.

41. The Floor Plan Collateral includes approximately 300 vehicles located on the Dealership Property.

42. The Christopher Fannin Personal Property Collateral currently located on the Dealership Property consists of an extensive firearms collection and knife collection.

43. Guarantors refused to allow the BB&T representatives to remove the Collateral, all in violation of their obligations under the Loan Documents. *See* Ex. C, at §§ 9.04 and 9.2(ii).

44. Moreover, at that time, the following threats of bodily injury were made against the BB&T representatives:

- Gary Fannin stated to Mitch Turknett to come up to his office to talk and that "he would come back in a box";

- Christopher Fannin repeatedly threatened Mitch Turknett and Tom Findlay that he was going to "beat" and/or "kick" their "ass";

- Christopher Fannin motioned to Tom Findlay to a spot on the lot and asked if he wanted "to go" meaning to fight; and

- Christopher Fannin threatened to "come to Florida" where Mitch Turknett and Tom Findlay live.

*See* Affidavit of Thomas D. Findlay ("Findlay Aff."), attached as Ex. A to BB&T's Ex Parte Motion for Writ of Immediate Possession, at ¶ 27.

## COUNT I

## BREACH OF TERM NOTE

45. BB&T hereby realleges and incorporates its allegations contained in paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46. The Term Note is a valid and enforceable contract between BB&T and Borrowers.

47. Borrowers materially breached their obligations under the Term Loan Agreement and the Term Note by failing to timely pay the amounts due and owing under their terms.

48. Borrowers' failure to timely pay the amounts due and owing under the Term Loan Agreement and the Term Note constitutes an event of default.

49. Pursuant to the Term Loan Agreement and the Term Note, the Term Note Indebtedness is currently due and owing and has not been paid.

50. As a direct and proximate result of Borrowers' default, BB&T has suffered damages in an amount no less than the Term Note Indebtedness, plus professional fees, costs, and expenses, which are recoverable pursuant to the Term Loan Agreement and the Term Note.

## COUNT II

### BREACH OF FLOOR PLAN AGREEMENT AND FLOOR PLAN NOTE

51. BB&T hereby realleges and incorporates its allegations contained in paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. The Floor Plan Agreement and Floor Plan Note are valid and enforceable contracts between BB&T and Borrowers.

53. Borrowers materially breached their obligations under the Floor Plan Agreement and Floor Plan Note by failing to timely pay the amounts due and owing under their terms.

54. Borrowers' failure to timely pay the amounts due and owing under the Floor Plan Agreement and Floor Plan Note, constitutes an event of default.

55. Pursuant to the Floor Plan Agreement and Floor Plan Note, the Floor Plan Indebtedness is currently due and owing and has not been paid.

56. As a direct and proximate result of Borrowers' default, BB&T has suffered damages in an amount no less than the Floor Plan Indebtedness, plus professional fees, costs, and expenses, which are recoverable pursuant to the Floor Plan Agreement and Floor Plan Note.

## COUNT III

### BREACH OF GUARANTIES

57. BB&T hereby realleges and incorporates its allegations contained in paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58. BB&T has a valid and enforceable contract with Guarantors.

59.     Under the Guaranties, Guarantors are obligated for all amounts due and owing under the Loan Documents.

60.     Guarantors have breached their obligations under the Guaranties by failing to pay all amounts due thereunder.

61.     BB&T has been damaged as a result of Guarantors' breach of the Guaranties in the amount of the Indebtedness.

62.     BB&T has performed all conditions required of it under the Loan Documents or has been excused by the breaches of Guarantors and/or Borrowers.

## COUNT IV

## POSSESSION

63.     BB&T hereby realleges and incorporates its allegations contained in paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64.     BB&T holds valid, properly perfected, and first priority liens on and security interests in the Collateral pursuant to the Floor Plan Agreement, the Christopher Fannin Security Agreement, and Loan Documents.

65.     Borrowers have defaulted under the terms of the Loan Documents by failing to pay the amounts due and owing thereunder.  As a result of Borrowers' default under the terms of the Loan Documents, Borrowers are in breach of the Floor Plan Agreement.  *See* Ex. D.

66.     Christopher Fannin has defaulted under the terms of the Floor Plan Guaranty and the Christopher Fannin Guaranty by failing to pay the amounts due and owing under the Loan Documents.  As a result of Christopher Fannin's default under

the terms of the Loan Documents, Christopher Fannin is in breach of the Christopher Fannin Security Agreement. *See* Ex. L.

67. Upon information and belief, Borrowers currently possess the Collateral in Boyd County, Kentucky at 7405 U.S. Route 60, Ashland, Kentucky 41102.

68. Upon motion, BB&T is entitled to a Writ of Possession under KRS 425.011, as made applicable by Federal Rule of Civil Procedure 64(a).

## COUNT V

## TEMPORARY RESTRAINING ORDER

69. BB&T hereby realleges and incorporates its allegations contained in paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70. Each of the Floor Plan Agreement and the Christopher Fannin Security Agreement contains a "waiver," clearly and unambiguously waiving any and all rights Defendants may have to notice prior to BB&T's seizure of the Collateral, and provides in relevant part that upon default BB&T shall have full power to enter upon the property of Borrowers to take possession of and remove the Collateral.

71. The Collateral is easily removed and subject to concealment, waste, conversion, conveyance, or removal by Defendants.

72. BB&T will suffer immediate and irreparable harm if Defendants sell, convey, convert, conceal, waste, or otherwise transfer the Collateral or remove all or part of it from the jurisdiction of this Court.

73.     Borrowers should be restrained from dissipating, absconding with, selling or transferring the Collateral or proceeds thereof in any manner pending entry of a Writ of Possession.

## DEMAND FOR RELIEF

WHEREFORE, BB&T respectfully requests that the Court:

1.      Enter a monetary judgment against Borrowers in the entire amount of the Floor Plan Indebtedness, plus accruing interest, professional fees, costs, and expenses in an amount to be established, but in no event less than $7,006,954.20.

2.      Enter a monetary judgment against Borrowers in the entire amount of the Term Indebtedness, plus accruing interest, professional fees, costs, and expenses, in an amount to be established, but in no event less than $10,816,072.55.

3.      Enter a monetary judgment against Guarantors in the entire amount of the Indebtedness, plus accruing interest, professional fees, costs, and expenses, in an amount to be established, but in no event less than $17,823,026.75.

4.      Upon BB&T's motion, issue a pre-judgment writ for immediate possession of the Collateral from Borrowers and Christopher Fannin, or alternatively, entry an order restraining Borrowers and Guarantors from dissipating, absconding with, selling or transferring the Collateral or proceeds thereof in any manner pending entry of a Writ of Possession.

5.      Grant BB&T all other relief to which it is entitled.

Respectfully submitted,

*/s/ Brian R. Pollock*
Brian H. Meldrum (bmeldrum@stites.com)
Brian R. Pollock (bpollock@stites.com)
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone:    (502) 587-3400

COUNSEL FOR PLAINTIFF, BRANCH BANKING AND TRUST COMPANY