UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, | |
| PLAINTIFF | |
| vs. | Case No. 17-cv-00037-HRW |
| FANNIN AUTOMOTIVE FAMILY, INC., *et al.*, | |
| DEFENDANTS | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

October 19, 2017

Respectfully submitted,

*/s/ Brian R. Pollock*
Brian H. Meldrum (bmeldrum@stites.com)
Brian R. Pollock (bpollock@stites.com)
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone:    (502) 587-3400

*Counsel for Plaintiff, Branch Banking and Trust Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2017, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system.

*/s/ Brian R. Pollock*
COUNSEL FOR PLAINTIFF

Plaintiff Branch Banking and Trust Company ("BB&T") submits this reply in support of its motion to dismiss all counterclaims [Doc. 32] (the "Motion")[1] asserted by the Fannin Defendants and states as follows:

## PRELIMINARY STATEMENT

The Fannin Defendants' Response [Doc. 38] does not provide any basis for this Court to deny the Motion.  First, the Fannin Defendants have no legal basis to overcome the series of broad releases they executed which require dismissal of the counterclaims.  Second, in an effort to get around the releases, they rely on new alleged facts not contained in their pleading, including a 31-page affidavit and documents.  This is an inappropriate response to a motion to dismiss, and the Court should exclude and/or disregard them.  Despite alleging new facts for the first time in response to the Motion, the Fannin Defendants' counterclaims should still be dismissed.

## I.    THE ADDITIONAL FACTS INCLUDED IN THE FANNIN DEFENDANTS' RESPONSE BRIEF AND IN THE ACCOMPANYING AFFIDAVIT OF CHRISTOPHER FANNIN SHOULD BE DISREGARDED.

In an effort to survive dismissal, the Response relies extensively on facts not alleged in the Counterclaim, but offered for the first time in the Response itself and/or in the affidavit and new documents attached to the Response.  The Court should exclude this material and not consider it in resolving the Motion.  *See Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008); 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a

_____

[1] Terms not otherwise defined herein have the same meaning as in BB&T's Motion.

1

memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

The 31-page attachment at D.N. 38-1 does not constitute a "pleading" under Rule 7(a), and the Court should exclude it and any reference to it in considering the Motion. This material is a wholly-improper attempt by the Fannin Defendants to question the enforceability of the Forbearance Agreement and release provisions that bar their counterclaims.  The extra-pleading material includes challenges to the authenticity of documents, allegations that BB&T somehow forced signatures on unfinished drafts, that an attorney was allegedly excluded from negotiations, that BB&T somehow breached the Forbearance Agreement, and more.  This objectionable, new material is so interwoven in the Response that delineating each improper reference is impracticable.  Suffice to say that the Response makes express citation to the Affidavit at least 19 times, with numerous references to the Affidavit's contents without citation.  [D.N. 38.]

The 31-pages of extra-pleading material amounts to an attempted untimely backdoor pleading amendment without leave of Court.  Rule 15 allows the Fannin Defendants 21 days after service of BB&T's Motion to Dismiss to amend their pleading. Following that 21-day period, the Fannin Defendants must seek leave of court to amend. *See* Fed. R. Civ P. 15(a)(1)(B)("In all other cases, a party may amend its pleading only with . . . the court's leave".).  Yet, the Fannin Defendants made no such request.  Instead, they oppose the Motion to Dismiss by reciting additional allegations not contained in their pleading.   Being wholly improper, these new factual allegations must be

disregarded.  *See*, e.g., *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir. 2006) (court should disregard facts that could have been pleaded but were not).

## II.     THE RELEASES BAR THE FANNIN DEFENDANTS' COUNTERCLAIMS.

### A.     North Carolina Law Applies To The Forbearance Agreement and Amendments.

The Fannin Defendants devote significant time in the Response setting forth a "most significant relationship" choice of law analysis and arguing for the application of Kentucky law to the Forbearance Agreement.  It is without dispute, however, that the Second Amendment to the Forbearance Agreement provides that North Carolina law applies to the Forbearance Agreement and each of the two amendments.  [Doc. 12-12 p. 37 at ¶ 10 ("The Forbearance Agreement, the First Amendment to Forbearance Agreement, and this Amendment shall be construed in accordance with the laws of the State of North Carolina.")].

The Fannin Defendants rely on *Breeding v. Massachusetts Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982), to suggest that this Court must engage in a "most significant relationship" test to determine choice of law.  The parties in *Breeding*, however, had not agreed to a choice of law provision as the Fannin Defendants have here.  In cases where the parties' contract contains a choice of law provision, Kentucky courts give effect to such provisions unless there is no reasonable relationship to the transactions.  *See Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 398 (6th Cir. 2000) (adopting § 187 of the *Restatement* (*Second*) *of Conflict of Laws* (1971)), and explaining that a parties' choice of law provision will be enforced unless the chosen state "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice");

3

*see also Ennes v. H&R Block E. Tax Servs.*, 2002 U.S. Dist. LEXIS 419, *4 (W.D. KY. 2002) (Kentucky courts enforce contractual choice of law provisions unless chosen state has no reasonable relationship).[2]

Here, BB&T is a North Carolina corporation with its principal place of business in North Carolina. [D.N. 12 ¶ 1.] North Carolina has a substantial relationship and is reasonable choice. Accordingly, the parties' choice of law provision should be enforced.

**B.     The Releases Contained in the Forbearance Agreement Bar Future Claims.**

In any event, both Kentucky and North Carolina allow the release of future or subsequently maturing claims, including claims sounding in tort. *See, e.g., Travis v. Knob Creek, Inc.*, 362 S.E.2d 277, 283 (N.C. 1987) (release of claims "on account of, connected with, or growing out of any matter or thing whatsoever" did not specifically refer to future claims); *see also* 76 C.J.S. *Release* § 76 (2007). In *Leitner v. Hawkins*, 223 S.W.2d 988, 990 (Ky. Ct. App. 1949), relied upon by the Fannin Defendants, the Kentucky court similarly recognized that a release may include subsequently maturing claims if "expressly provided for or falling within the fair import of the terms of the release." In *Leitner*, unlike here, the release language did not meet that standard to release a maturing contribution claim.

---

[2] The Fannin Defendants cite Section 188 of the Restatement of Choice of Laws for the "most significant relationship" test, which as the *Ennes* case explains, applies absent a choice of law clause. *See Ennes*, 2002 U.S. Dist. LEXIS 419, at *6 ("the Court would apply the 'most significant relationship' test set forth in § 188 of the Restatement and adopted by Kentucky courts to determine which state's law governs in the absence of a contractual choice by the parties").

Here, the Fannin Defendants released BB&T from all Liabilities[3] "*regardless of whether the Liabilities are known or unknown, now existing or hereafter arising*, joint or several, at law or in equity, *arising by statute, contract, warranty or tort*. . ." [Doc. 12-12, page 4, ¶ 4(a) "Release" (emphasis added)].

**C.    At Bare Minimum, All Claims Relating to Conduct Prior to January 30, 2017 Have Been Released.**

The Fannin Defendants also wrongly contend that the releases only apply to conduct prior to August 12, 2016, the date of the execution of the initial Forbearance Agreement.  [Doc. 38 at 9.]  Even if the Court finds that the releases do not extend to future conduct, all the counterclaims which relate to conduct prior to January 30, 2017, the date of the Second Amendment to the Forbearance Agreement, are absolutely covered by the releases.

The overwhelming majority of the factual allegations in the Counterclaim occurred **before January 30, 2017**:

| Alleged Act | Date | Cite |
|---|---|---|
| Improper pressure re: 15 day vs. 7 day repayment | 2015-2016 | Counterclaim ¶¶ 6, 17. |

---

[3] Liabilities is defined in the Forbearance Agreements to include "*any and all claims, counterclaims, demands, rights of action, causes of action, debts, damages (actual or punitive), costs, expenses, attorneys' fees, and all liabilities and responsibilities of every kind or character* (all such claims, counterclaims, demands, rights of action, causes of action, debts, damages (actual or punitive), costs, expenses, attorneys' fees, liabilities and responsibilities shall collectively be referred to as the "Liabilities")."  [Doc. 12-12, page 4, ¶ 4(a) "Release" (emphasis added).]

| Alleged Act | Date | Cite |
|---|---|---|
| False allegations of fraud/double-floor planning, improper declaration of default, related alleged slander | Summer 2016 | Counterclaim ¶¶ 10-17, 102. |
| Reduced pre-owned floor plan commitment for no good business reason | October 2016 | Counterclaim ¶ 20. |
| Demand for $2 million in proceeds from Ford Sale and $300,000 deposit | January 2017 | Counterclaim ¶ 25; D.N. 12-12. |
| Interference with bridge loan re: Toyota sale | January 25, 2017 | Counterclaim ¶ 28. |
| Alleged conversion of $276,000.00, subsequent dishonorment, related alleged slander | January 20-26, 2017 | Counterclaim ¶¶ 34-40, 102. |
| Interference with Ford dealership sale | January 20-26, 2017 | Counterclaim ¶ 43. |
| Failure to reinstate floor plan loan | January 5, 2017 | Affidavit ¶ 4. |

These pre-January 30, 2017 factual allegations are woven into all but four of the counts in the Counterclaim, and even under the most limited interpretation of the effect of the releases, counts that rely on these allegations must be dismissed. The four remaining counts – VIII (Assault & Battery), IX (Improper Writ of Possession), XII (Declaratory Judgment), and XI (Punitive Damages) – are addressed below.

### D.    The Forbearance Agreements Are Enforceable.

The Fannin Defendants also wrongly argue that the releases fail for lack of consideration. This argument is wholly without merit because BB&T's agreement to forbear from enforcing its rights under the Loan Documents constituted consideration flowing to the Fannin Defendants. *See RL REGI N.C., LLC v. Lighthouse Cove, LLC*, 367

N.C. 425, 430 (2014) (reversing trial court's ruling allowing defendant to assert claims waived in forbearance agreement and holding that "in executing the forbearance agreement, defendant. . .waived her potential claims. . .in exchange for leniency in repaying the debt. The trial court improperly allowed defendant to assert a claim she waived, thus depriving plaintiff of its rights under the forbearance agreement.").

Similarly, the new contention that BB&T somehow broke a promise to reinstate the Floor Plan does not negate the releases in the Forbearance Agreement. The Second Amendment to the Forbearance Agreement required the Fannin Defendants to be in "strict compliance" with the Agreement as of February 3, 2017, in order for BB&T to fund certain specified transactions under the Floor Plan Note. [D.N. 12-12 at 3.] However, the Fannin Defendants have not (and cannot) allege that they were in strict compliance with the terms of the Agreement.[4]

## III.   IN ADDITION TO BEING RELEASED, THE COUNTERCLAIMS FAIL AS A MATTER OF LAW.

Notwithstanding that the Fannin Defendants released their Counterclaims, each Counterclaim fails for the substantive reasons addressed in BB&T's initial brief. BB&T

---

[4] The Fannin Defendants will not be able to allege that they were in strict compliance with the Second Amendment to Forbearance Agreement [D.N. 12-12], because, among other things, they were not in compliance with (i) Section 3(s), requiring a $300,000.00 deposit by February 3, 2017; (ii) Section 3(t), requiring that they not be out-of-trust as of February 3, 2017; (iii) Section 3(u), requiring that they retire all trade lien payoffs by February 3, 2017; and (iv) Section 3(v), requiring that they deliver to BB&T a complete, non-contingent purchase agreement with Eddie Franklin on or before February 10, 2017. Further, the Fannin Defendants admit they could not make the $2 million curtailment on March 1, 2017, and that they merely had an LOI, not a final purchase agreement, with Franklin. *See* Counterclaim, ¶¶ 26-27, 46.

7

responds below to additional arguments made by the Fannin Defendants relating to the counts that rely on allegations of acts by BB&T after January 30, 2017, the date of the Second Amendment to the Forbearance Agreements.

### A.   BB&T Is Not a Fiduciary, or Part of a "Special Relationship," with the Fannin Defendants.

The Fannin Defendants argue that a fiduciary relationship was created when BB&T exercised its rights under the Loan Documents and allegedly took control of the collateral.  [Doc. 38 at 18-19.]  However, in *Layne v. Bank One, Kentucky, N.A.*, 395 F.3d 271, 281-82 (6th Cir. 2005), the creditor controlled stock that the borrower pledged as collateral for a loan, and the Sixth Circuit held that the creditor's control over the collateral did not give rise to a fiduciary relationship.  Under *Layne*, the Fannin Defendants have not alleged a fiduciary relationship with BB&T.

The Fannin Defendants also rely on *Snow Pallet, Inc. v. Monticello Banking Co.*, in which the Court of Appeals of Kentucky reaffirmed the Sixth Circuit's holding in *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 892-94 (6th Cir. 2002), that the only instance in which Kentucky courts have recognized a claim for breach of fiduciary duty by a borrower against a creditor is where a creditor "profited from confidential information received through the borrower."  367 S.W. 3d 1, 4-5 (Ky. App. 2012) ("In an arms-length commercial transaction, where each party is assumed to be protecting its own interest, no such [fiduciary] duty arises.").  *See also Scott v. Forcht Bank, NA*, 521 S.W. 3d 591, 597 (Ky. App. 2017) (granting judgment on the pleadings to creditor where borrower alleged that creditor breached fiduciary duty by not extending second loan).

The Fannin Defendants do not, and cannot, allege that BB&T profited off their confidential information.  As a result, *Snow Pallet* supports BB&T's argument that it did not have a fiduciary relationship with the Fannin Defendants, and their claim for breach of fiduciary duty should be dismissed.

The Fannin Defendants make much ado about a provision in the Floor Plan Agreement that provides BB&T with a limited power of attorney for the purpose of inserting omitted information into documents:

> 10.03   Irrevocable Power of Attorney; Signatory Authorization – Factories, Auction Houses, etc.
>
> Borrowers hereby irrevocably appoint BB&T (and its officers, agents and/or employees) as its attorney-in-fact and coupled with an interest for the purpose of supplying and/or inserting any omitted information into any and all documents relating to the Floor Plan Credit and/or any Obligations; and for the purpose of carrying out any instrument, documents, or notice which BB&T may deem necessary or advisable to accomplish the purposes hereof, including the authorization in the title to the section hereof.  [Doc. 12-1 at 19.]

The Fannin Defendants seem to believe that this language somehow turns BB&T into a fiduciary for all purposes [Doc. 38 at 18], creates a heightened standard of care for their negligence claim [Doc. 38 at 23], and imposes heightened confidentiality obligations [Doc. 38 at 29].   However, attorney-in-fact provisions of this type do not create generalized duties, but only those related to the limited purposes expressed in the language of the provision.  *See, e.g., Cusano v. Klein,* 280 F. Supp. 2d 1038, 1041 (C.D. Cal. 2003) ("In this case, the provision does not make KISS Co. Cusano's attorney-in-fact in all matters.  KISS Co. is his attorney-in-fact, and therefore his fiduciary, only for the limited purpose of executing documents that he fails or refuses to execute and that are necessary

9

to effectuate the intent of the Employment Agreement.").   Without an allegation that BB&T ever invoked or utilized this attorney-in-fact provision, it does not create even a fiduciary relationship of limited scope.

In their Response, the Fannin Defendants assert a new tort claim based on a breach of the duty of good faith and fair dealing based on a purported "special relationship" between BB&T and the Fannin Defendants.  [*Id.* at 17-18].  The Fannin Defendants' new tort theory fails because "Kentucky law does not recognize an independent tort for breach of good faith and fair dealing outside of insurance contracts."  *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 634 (E.D. Ky. 2012).  *See also Ennes v. H&R Block E. Tax Servs., Inc.*, No. 3:01CV-447-H, 2002 U.S. Dist. LEXIS 419, at *7-13 (W.D. Ky. Jan. 14, 2002) (no tort claim for breach of good faith and fair dealing in franchise dispute between parties with 30-year long contractual relationship).  The Loan Documents reflect an ordinary commercial relationship between a creditor and debtor that does not give rise to a tort claim for breach of good faith and fair dealing as a matter of law.

**B.  The Fannin Defendants Have Not Alleged Plausible Vicarious Liability for Assault and Battery (Count VIII).**

The Court must assess the plausibility of imposing vicarious liability on BB&T for the alleged assault and battery.  The Counterclaim does not contain sufficient facts to permit the Court to make this determination.  It does not identify the alleged agent in question, that agent's role with or relationship to BB&T, or any additional details regarding the alleged assault of Gary Fannin.  The Fannin Defendants attempt to inject extra-pleading material in their Response for the first time on this issue, but as set forth

10

in Section I, the Court should disregard this.   Additionally, contrary to the Fannin Defendants' contentions, claims of this nature are subject to pre-discovery dismissal.   *See Moore v. Ford Motor Co.*, 265 Ky. 575, 580 (Ky. 1936) (affirming dismissal of assault/battery claim against employer where employee not authorized to use force by employer).

### C.    The Fannin Defendants' Violation of Privacy (Count X) Count Fails.

Because it provides no private right of action, the Fannin Defendants have now retreated from the Gramm-Leach-Bliley Act.   In their Response, they now contend that Count X is a "general violation of privacy" claim.   [Response at 29.]   Neither state nor federal law recognizes a tort of this nature.   Kentucky law recognizes a claim for invasion of privacy, but the Counterclaim does not invoke the applicable elements, and the tort may only be asserted by individual persons, not business entities.   *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981); *Maysville Transit Co. v. Ort*, 296 Ky. 524 (Ky. 1943) (right of privacy "designed primarily to protect the feelings and sensibilities of human beings, rather than to safeguard property, business or other pecuniary interests").   Accordingly, the Court should dismiss Count X.

### D.    The Fannin Defendants Fail to State a Claim for Improper Writ of Possession (Count XI).

Kentucky does not recognize a tort for improperly or unnecessarily obtaining a writ of possession.   BB&T noted in its opening brief that a litigant may challenge a writ in one of two ways:   a motion to quash (KRS 425.081) or re-delivery (KRS 425.116), and that the Fannin Defendants did neither.   The Fannin Defendants cite no law in their Response to contradict this analysis or to support the notion that Kentucky recognizes a tort claim that is not contained in the statute.   Instead, they distract by suggesting BB&T

11

did not "need" the writ because it already had control of its collateral.  However, a party's subjective "need" for a writ is not an element in the statute.[5]  A writ "shall issue" if a movant establishes the probable validity of its claim to possession and posts a bond.  *See* KRS 425.036.  BB&T was entitled to a writ because it established the validity of its debt and security interest.  Accordingly, the Court should dismiss the Fannin Defendants' claim for improper writ of possession.

### E. The Fannin Defendants Fail to State a Claim for a Declaration of the Right to a Jury Trial (Count XII).

A separate count for declaratory judgment is the wrong procedural vehicle to determine the enforceability of a contractual jury trial waiver.  The proper vehicle is a demand under Fed. R. Civ. P. 38, and, if necessary, a motion to strike under Fed. R. Civ. P. 39.  *See Poynter v. Ocwen Loan Serv., LLC*, No. 13-CV-773, 2017 U.S. Dist. LEXIS 99100, *9 (W.D. Ky. June 27, 2017) (granting motion to strike); and *Integra Bank Nat'l Ass'n v. Rice*, No. 11-CV-49, 2011 U.S. Dist. LEXIS 63374, *5 (W.D. Ky. June 14, 2011) (same).  The Fannin Defendants have cited no case law in which a litigant was permitted to include a separate declaratory judgment count regarding the enforceability of a jury trial waiver that would apply to the very litigation in which the declaratory judgment was sought.  The reason for

---

[5] While beyond the scope of the motion to dismiss, this contention is also false.  BB&T would not have burdened the Court or incurred the expense of a bond if it could have obtained possession of its collateral without endangering its representatives.  As detailed in the Affidavit of Tom Findlay, filed in support of the Motion for a Writ of Possession (Dkt. No. 3), Christopher Fannin threatened BB&T representatives with bodily injury when they attempted to remove the collateral peaceably on April 11, 2017.

this is clear:  the enforceability and scope of a jury waiver must be resolved, by definition, as a pre-trial matter under Fed. R. Civ. P. 39.

The dismissal of Count XII as procedurally defective will not prejudice the Fannin Defendants.  They have made a jury demand.  If BB&T moves to strike that jury demand, the Fannin Defendants can raise their issues in opposition.  BB&T notes that, contrary to the Fannin Defendants' response, federal law determines the right to a jury trial in a diversity matter, not Kentucky law.  *See Simler v. Conner*, 372 U.S. 221, 222 (1963).

**F.      The Punitive Damages Count Must Be Dismissed (Count XI).**

BB&T established in its principal brief that punitive damages are not a free-standing cause of action, but only a potential remedy for other predicate causes of action. The Fannin Defendants have not presented any authority to support a position that a claim for punitive damages constitutes a separate cause of action, as opposed to something to be asserted in a prayer for relief.  Consequently, the Court should dismiss Count XI.

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in BB&T's moving papers, the Fannin Defendants' counterclaims should be dismissed in their entirety.